FREEMAN v. CLEARY.†

(Court of Civil Appeals of Texas. March 29, 1911. Rehearing Denied April 26, 1911.)

1. APPEAL AND ERROR (§ 965*)—DISCRETION OF TRIAL COURT—RULING ON APPLICATION FOR CHANGE OF VENUE.

An application for a change of venue being addressed to the sound discretion of the trial court, his ruling thereon will not be disturbed, unless the discretion has been abused to the prejudice of the party complaining.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3836; Dec. Dig. § 965.*]

2. APPEAL AND ERROR (§ 1024*)—REVIEW—QUESTIONS OF FACT—CHANGE OF VENUE.

Where the testimony on the hearing of an application for a change of venue on the ground of the prejudice of the people against the applicant was conflicting, and the court was acquainted with the witnesses and knew their occupations and their peculiar bias of mind, his denial of the application will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4028; Dec. Dig. § 1024.*]

3. VENUE (§ 50*) — CHANGE OF VENUE—GROUNDS.

Change of venue is based on the theory that a county can be found where the prejudice in the original county does not exist, and prejudice of a general nature, which exists to a greater or less extent among the great body of the people, cannot form the basis for a change of venue.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 73; Dec. Dig. § 50.*]

4. WITNESSES (§ 240*)—EXAMINATION—LEADING QUESTIONS.

A question asked a witness in a personal injury action, "What, if any, unusual conditions did you observe about the groins of" the person injured, is not objectionable as leading, because it does not suggest the answer.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 839; Dec. Dig. § 240.*]

5. EVIDENCE (§ 471*)—STATEMENT OF FACT.

The answer "no unusual conditions" is a statement of fact of a person of ordinary intelligence who had seen the person injured.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2149; Dec. Dig. § 471.*]

6. APPEAL AND ERROR (§ 1032*)—HARMLESS ERROR—BURDEN OF SHOWING PREJUDICE.

The court on appeal will not hold that the defeated party was injured by the action of the court in allowing a leading question to be asked an expert witness, and the answer given, but the defeated party must show injury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4048; Dec. Dig. § 1032.*]

7. EVIDENCE (§ 471*)—STATEMENT OF FACT—CONCLUSION OF WITNESS.

Where a witness in a personal injury action testified that he had seen plaintiff naked, an answer that plaintiff did not wear a truss was a statement of a fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2167; Dec. Dig. § 471.*]

8. TRIAL (§ 133*)—MISCONDUCT OF COUNSEL.—ACTION OF COURT.

Where, in a personal injury action, it appeared that, while a physical examination of plaintiff was being had by an expert witness for plaintiff, physicians who were witnesses for defendant proceeded to examine plaintiff's

---

person, the action of plaintiff's counsel in asking one of such physicians on cross-examination as to who had told him to force himself into the examination of plaintiff was not ground for reversal; the court sustaining an objection to the question.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

**9. ACTION (§ 12*)—DEFENSES.**

An answer in an action for personal injuries which avers that the allegations of injury in the petition were overdrawn and exaggerated to influence the court and jury, and that defendant has been willing to adjust with plaintiff amicably any just claim, but that plaintiff and his counsel are not willing to adjust the claim, and that plaintiff in seeking to extort from defendant money on allegations he knows to be untrue, etc., sets up no defense.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 12.*]

**10. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS—NECESSITY.**

Where the instructions were full and explicit so far as they went, and the only error, if any, was one of omission, the party complaining should request a charge supplying the omission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

**11. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.**

The error, if any, in permitting an answer to a leading question to prove a fact otherwise proved is not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4141; Dec. Dig. § 1048.*]

**12. TRIAL (§ 58*)—WITHDRAWAL OF EVIDENCE.**

The court on appeal will not reverse a judgment because depositions read to the jury were withdrawn by the court, in the absence of anything to show that the testimony therein was incompetent or illegal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 137; Dec. Dig. § 58.*]

**13. DEPOSITIONS (§ 110*)—OBJECTIONS—SUFFICIENCY.**

Objections to depositions interposed before any part of the testimony was read, and to each and every question propounded, on the ground that the questions called for hearsay testimony and for the conclusion of the witness, were properly overruled, though a part of the questions and answers were improper.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 323–328½; Dec. Dig. § 110.*]

**14. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—ERRONEOUS RULINGS ON EVIDENCE.**

Where testimony received over specific objection was subsequently withdrawn and the jury instructed not to consider it, the admission of the testimony would not be deemed prejudicial, in the absence of any showing that the testimony had a tendency to injure the party complaining.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4178; Dec. Dig. § 1053.*]

**15. DEPOSITIONS (§ 110*)—OBJECTIONS—SUFFICIENCY.**

To pass on the admission of a deposition, there must be specific objection to the testimony, and not an objection made prior to the introduction of the deposition aimed at the whole deposition, consisting of many answers to many questions.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 323–328½; Dec. Dig. § 110.*]

**16. APPEAL AND ERROR (§ 169*)—QUESTIONS REVIEWABLE—RULINGS OF TRIAL JUDGE.**

The action of the trial court must be invoked on a point before it can become a subject for revision on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1018; Dec. Dig. § 169.*]

**17. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.**

A person, 55 years old, sustained painful and serious injuries. He was in bed for 15 weeks and suffered pains in the groin and back. His eyesight was bad, and his digestion greatly disturbed since the injuries. He was a physical wreck, and his left leg was nearly paralyzed. He sustained a double rupture. He was not able to perform physical labor, and his condition was permanent. He had been earning $21 a week as a lithographer. *Held*, that a verdict for $16,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Action by H. J. Cleary against T. J. Freeman, receiver of the International & Great Northern Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

King & Morris, Hicks & Hicks, and F. C. Davis, for appellant. Bertrand & Arnold, Perry J. Lewis, and H. C. Carter, for appellee.

FLY, J. Appellee sued T. J. Freeman, appellant, as receiver of the International & Great Northern Railroad Company, alleging that he was a passenger on a train belonging to appellant, on or about June 14, 1908, and had serious and permanent injuries inflicted on him through the negligence of appellant, in permitting or causing the train on which he was riding to come in violent contact and collision with some object on the track. The cause was tried by jury, and resulted in a verdict and judgment for appellee for $16,000.

In deference to the verdict of the jury, which has testimony to support it, we conclude that appellee was seriously and permanently injured through the negligence of appellant.

The first assignment of error assails the action of the court in overruling the application of appellant to change the venue from Bexar county. The three grounds mentioned in statute (article 1271, Rev. Stats. 1895) namely, that there exists in Bexar county so great a prejudice against the receiver and the railroad company that they cannot obtain a fair and impartial trial; that there is a combination against the receiver and company, instigated by influential persons, by reason of which they cannot expect a fair and impartial trial, and for other good and sufficient causes. The first ground is the only one insisted on in this court. The application for change of venue was assailed by appellee by a full de-

nial of the allegation of prejudice and combination, and of the existence of any other good and sufficient cause for change of venue. The contest was supported by the affidavit of three citizens of Bexar county.

[1] An application for a change of venue is addressed to the sound discretion of the trial judge, and, unless it is apparent from the record that such discretion has been abused and an injustice done to the appellant, an appellate court will not disturb the order of the trial court. San Antonio v. Jones, 28 Tex. 19. It is the rule that the burden is imposed upon the complaining party of showing very clearly and very strongly that the trial court abused its discretion, and the rule is stated even stronger by some courts. Elliott, App. Proc. § 604, and authorities cited in note.

[2] We do not think that it appears from the evidence adduced for and against the application that there was any abuse of judicial discretion; but, on the other hand, there is evidence, even on the part of the witnesses for appellant, that tends to sustain the judgment of the court. Some of the witnesses not only attacked the fairness and impartiality of the jurors of their own county, but extended it to the whole state, which rendered it unworthy of consideration, for, if sustained, no suits for damages arising from death or personal injuries could be prosecuted anywhere in Texas. Others of appellant's witnesses testified that fair and impartial jurors could be obtained in Bexar county; one stating that there are thousands of impartial men in the county. Another witness testified that the jurors in the county are as fair as in any county in the state. Others seemed to think that the manner of choosing the juries was responsible, and not a want of impartiality on the part of the mass of the jurors. One witness who had been engaged in suits with railroads for damages growing out of cattle shipments did not seem to think that the prejudice against railroads extended to cattle shipments, but were confined to personal injury suits. He had been on a jury a few days before, and thought that the jury "looked like it was pretty good."

In addition to that part of the testimony of the witnesses which was favorable to appellant, two witnesses were introduced by appellee, one being the county clerk, who swore that railroads could get a fair trial in Bexar county—as fair as in any other county in Texas. One witness, who has been district attorney and had a wide experience with jurors in Bexar county, testified: "If I were trying a corporation suit, I would expect to get just as fair a trial as I would if it were a suit between two individuals; and, if I did not do it, I would not blame the court or the system for it, but my error in taking the wrong man; that enters into every class of litigation."

In addition to the evidence contained in the bill of exceptions taken by appellant to the refusal of change of venue, the court appended thereto the qualification that after the application was overruled a panel of 27 men that had been regularly drawn from the wheel was tendered to the parties, and each of them was closely questioned by plaintiff and defendant, and a jury was selected from that panel; each one swearing that he could render a fair and impartial verdict in the case. The court was acquainted with the witnesses, knew their occupations or professions, and the peculiar bias of mind each would have by his employment, business connections, and environments, and was therefore in a position to give such force and weight to the testimony as it might be entitled to. We are of the opinion that he did not err in overruling the application for change of venue.

If, as testified by perhaps a majority of the witnesses, there is a prejudice against corporations in every county in Texas, it would present a condition of affairs greatly to be regretted; but such a state of facts could form no basis for a change of venue, because each corporation case would become peripatetic in its nature, and be like unto the dove sent out from the ark, which "found no rest for the sole of her foot," because if granted in one county on such general prejudice it should be granted in each of the others, until it has run the gauntlet of them all. We mention this because the existence of general prejudice against any and all corporations is made the basis of a large portion of the evidence introduced by appellant as to prejudice in Bexar county.

[3] Change of venue is based upon the theory that a county can be found where the prejudice in the original county does not exist, and prejudice of a general nature, which exists to a greater or less extent among the great body of the people, cannot form the basis for a change of venue. Proper care can and should be exercised in so using the machinery of trial courts that the fairest and best men in the community shall be chosen to serve upon the juries, men who will stifle and hold in abeyance any bias they may have in favor of the individual as against a corporation, and who will perform their duty regardless of any bias in favor of the one or prejudice against the other. That there are thousands of such men in Bexar county the testimony shows, and with the upright judiciary in the trial courts chosen by the people to instruct such jurymen in the law there should be no cause for complaint.

The same rigid tests, as to change of venue, should not, we think, be applied in civil cases where there is a general feeling in the community against a certain class of corporations, or all corporations, as would be applied in cases of murder, and other heinous crimes, where a community or county is enraged over the perpetration of the

offense, and so inflamed as to render a fair trial improbable, if not impossible. Under such circumstances, where the life or liberty of a citizen is at stake, and where the recent crime has inflamed the people, more rigid rules would be applied and enforced, than in a case where there is no prejudice against the individual, and where there has been nothing to arouse the people, but where a normal feeling exists. Appellant cites but one civil case in support of his propositions, but cites a number of criminal cases, in all of which the defendants had been indicted for murder, and in some, if not all, of which the right to a change of venue was based on the atrociousness of the crime, and the horror and indignation that its perpetration had aroused in the entire community. In criminal, as well as civil, cases, however, it has been the uniform holding that the question of a change of venue is a matter resting within the sound discretion of the trial court, and, unless there is an abuse of such discretion, its action will not be disturbed. There is nothing in the case of Trimble v. Borroughs, 41 Tex. Civ. ·App. 554, 95 S. W. 614, that could affect the decision in this case, which depends upon the peculiar ·facts and circumstances adduced on the hearing of the application for change of venue.

[4] The second assignment of error is that the court erred in the testimony of witness Strong. The first proposition is that the question, "What, if any, unusual condition, did you observe about the groin of Mr. Cleary?" is leading. We think it was not leading. It did not suggest the answer, as clearly appears from the answer, "No unusual conditions."

[5] The answer did not call for any matter of expert knowledge. Any person of ordinary intelligence would know, after seeing a man naked, if he observed anything unusual about the man's groin, as would be the case if he had hernia.

[6] There is no effort to indicate that the answer was prejudicial to appellant, not even a statement to that effect, and this court cannot base error requiring a reversal on mere abstractions. There is no reference to any part of .'the record, which might be consulted in order to ascertain if appellant was injured by the question and answer, and we cannot hold that because a question is leading, and the answer to it not given by an expert, that appellant was injured by it. It may have been, so far as the brief discloses, on a very immaterial matter. We find, however, that experts testified that if persons saw the man "stripped they could have told it anyway, any time."

[7] The question, "I would ask you what, if anything, you ever saw him wear in the way of a truss," was proper, as admitted by appellant, and the answer, "He did not wear a truss," was responsive to it, and was the statement of a fact, and not a conclusion. The witness had testified that he had seen him perfectly naked, perhaps a. hundred times, and that he wore nothing upon his person. The objection to the question and answer presents a mere abstraction,. . no claim being advanced that it had any effect on the decision of the case, and there is not even a remote possibility that it did· have.

[8] There is no merit in the fourth assignment of error, which complains of a question asked Dr. Dupuy, a witness for appellant, on cross-examination. It seems that, while a physical examination of appellee· was being had by Dr. Shropshire, a witness for appellee, in the presense of the jury, that. Drs. Dupuy and Jameson, witnesses for appellant, who were in the courtroom, went to· appellee and proceeded to examine his person, and when Dupuy was being cross-examined by counsel, he was asked: "I was a little surprised at you and Dr. Jameson. Who told you to come around and force· yourselves in?" Appellant's counsel objected and remarked: "I think he is surprised that the company is offering any testimony," which was followed by the retort from appellee's counsel: "I am surprised at the way in which you are offering it. • I am a little surprised at it." The court sustained the objection to the question, but appellant asserts that it was calculated to prejudice the jury. Even if the question had been permitted, we do not think that it could have had any influence on the minds of any ordinary jury. Certainly after it was excluded there can be no cause of complaint. We do not deem it necessary to comment on the pertinency and force of the question to the physician, or the doubtful propriety of his endeavoring to examine a party who was being examined by the physician of the other party. No ruling of the court can be complained of, because the only ruling was in favor of appellant. •

We do not think there is any such ambiguity in the charge of the court on the measure of damages as would cause a jury to believe that damages should be given as alleged in the petition, and also those proved, if they were different. The charge is plain, we think, and we do not think it was calculated to mislead any ordinary juryman.

[9] The answer in this case consists of a qualified general denial, the qualifications being the matters admitted in the special answer, which is as follows: "And for further special answer herein this defendant would show that, if plaintiff was injured at all, as alleged, which is not admitted, but specially denied, that the allegations of injury in plaintiff's said amended petition are overdrawn, exaggerated, and highly colored for the express purpose of influencing the minds of the court and jury. This defendant would further show that it is now and has been willing to adjust with plaintiff amicably any just claim, if any, he has against it, but further shows that plaintiff

and his various counsel are not willing and have not shown any disposition to so adjust his alleged claim. Further this defendant verily believes and charges the fact to be that plaintiff is seeking and has sought to extort from this defendant money on charges and allegations he knows to be untrue. And further this defendant verily believes and charges that plaintiff in making the inflammatory charges set out in his petition well knows the same to be inflammatory exaggerations, for the express purpose of extorting a large sum of money from this defendant. And further this defendant verily believes that plaintiff is being maintained and furnished money by his counsel during the pendency of this suit, with the understanding that if judgment is obtained in this suit against this defendant they will share in its recovery." That answer sets up no defense whatever, and it would have been a practical impossibility to have presented appellant's theory of defense to the jury, but complaint is made of the charge, in the sixth assignment of error, which presented the circumstances under which appellee would be entitled to recover.

[10] The charge was full and explicit so far as it went, and it is not contended that there is any error, except one of omission, and if appellant had any defense to the action he should have embodied it in a special charge, and have requested it to be given to the jury. Railway v. Leak, 64 Tex. 654; Cockrill v. Cox, 65 Tex. 669; Harrell v. Houston, 66 Tex. 278, 17 S. W. 731; O'Neill v. Bank, 67 Tex. 36, 2 S. W. 754; Railway v. Crowder, 70 Tex. 222, 7 S. W. 709; Rousel v. Stanger, 73 Tex. 670, 11 S. W. 906; Currie v. Gunter, 77 Tex. 490, 14 S. W. 127.

The seventh and eighth assignments of error refer to questions to the witness Gordon Spencer, as to whether there was any abnormal or unusual condition about the person of appellee, and are overruled. They are disposed of by what we have said in connection with the second and third assignments of error.

[11] The ninth assignment of error complains of certain testimony of the witness Otto Schunke, because it was elicited by a leading question. We do not think the question was leading; but, if it had been, the testimony could not have injured appellant, because the same facts were proved by other witnesses. Appellant does not claim that it injured his cause. All that the witness swore was that he saw a bruise all over one side of appellee, and that it was black and blue.

The tenth and eleventh assignments are grouped; the former claiming error in admitting, over objection of appellant, certain testimony of Charles Bertrand, and the latter claiming error because the court did not grant the motion for new trial on account of the testimony being admitted. The testimony, it appears, was stricken out on motion of appellant, and the assignments are clearly without force or merit.

The twelfth assignment of error is overruled. As hereinbefore stated, any witness could testify as to the appearance of a man's body, whom he had seen naked many times. The physicians testified that any witness could tell if a man had hernia, if he saw him naked. The questions were not leading. It was proved by other testimony that the man did not have hernia before he was hurt in the collision.

The thirteenth assignment of error assails the action of the court in overruling a motion offered by appellant that the jury be discharged as disqualified to hear the cause. The only proposition thereunder is that, "where a plaintiff has read to the jury, over the urgent objection of defendant, the depositions of three witnesses on the vital issue of the case, and then because of an alleged misunderstanding seeks to withdraw them, or the greater part of them, so as to avoid exceptions thereto, the court should grant the motion of defendant, asking that the jury trying the case be discharged, because disqualified by hearing such depositions read; there being no other way to protect appellant against the impression made thereby." It appears from the bill of exceptions that, when the depositions of W. C. Campbell, Walter E. Strong, G. L. Spencer, W. S. Mitchell, and W. S. Stevens were offered, a general objection was made to each and all the questions and each and all the answers on many grounds. Only three of the depositions were read; but after they had been introduced counsel for appellee asked leave to withdraw them from the jury, and the court permitted it, and instructed the jury not to consider any of the testimony, and then counsel for appellant asked that the jury be discharged and the cause continued, which motion was overruled.

[12] There is no assignment of error setting up the incompetency, illegality, or impropriety in the testimony that was withdrawn from the jury, but the naked question is, Shall this court reverse a judgment because testimony has been read to a jury and withdrawn, even though the evidence was legitimate and proper? The court stated that he thought the whole of the testimony was admissible, and there is no contention here that it was not, and the only contention is that after it had been read in evidence and withdrawn the jury should have been discharged, and the cause continued. We cannot presume that the evidence was improper that was read to the jury, and we fail to understand how appellant was injured by the withdrawal of testimony in favor of appellee that was legitimate and proper. In the cases cited by appellant the evidence was held to be improper and inadmissible, and that probably its ill effects were not removed by its withdrawal. But no question as to the illegality or im-

propriety of the evidence under consideration is presented to this court. We cannot hold that it was improper on the ground that it was withdrawn by the party who offered it, because he stated that he believed it was "all right," and the court also so stated. It is admitted by appellant in his proposition that the testimony was upon "the vital issue in the case," and he does not attack its admissibility.

[13] The objections were not made to each question and answer as it was read, but, before any part of the testimony was read, an objection was presented "to each and every question propounded to said witness by the plaintiff, separately, for the reasons that such questions are hearsay and call for hearsay testimony, are irrelevant and immaterial, and call for the conclusion of the witness. And we object to the answers to each question for the reason that the answers are the conclusions of the witness, said answers are irrelevant and immaterial and incompetent, the witness not showing himself to be in possession of the facts about which he speaks; and we object to them as being hearsay, and because the witness does not show himself to be in a position to testify about the things asked about and testified about; and because said answers, furthermore, are not responsive to the questions, and are not voluntarily given." The court very properly overruled the objections, even though a part of the questions and answers had been improper. But appellant does not claim in this court that any of them were improper. The court, however, instructed the jury not to consider the testimony, and we will presume that the instruction was obeyed. The motion to discharge the jury was not based on the impropriety of the evidence, but merely on the ground that the jury had heard it.

The fourteenth assignment of error complains of certain testimony of W. S. Mitchell introduced by appellee. The testimony was withdrawn, and the jury instructed not to consider it. There is no bill of exceptions to the reading of the deposition on the ground sought to be raised in the proposition, namely, that the witness was not qualified as an expert.

[14] If there had been a specific objection to the identical testimony, the testimony having been withdrawn and the jury instructed by the court not to consider it, in the absence of any showing that the evidence had a tendency to injure appellant, the assignment cannot be sustained. What has been stated herein as to the thirteenth and fourteenth assignments applies with equal force to the fifteenth, sixteenth, and seventeenth assignments, all of which object to the withdrawal of the testimony of the same witnesses. The testimony was objected to as indicated in the discussion of the thirteenth assignment.

[15] In order to pass upon the introduc-

tion of testimony, there must be specific objection to the identical testimony, and not an objection made prior to its introduction, which is aimed at a whole deposition, which consists of many answers to many questions. All of the preliminary objections cannot be held to have been applicable to each question, and no court can be expected to select the appropriate objection out of the mass of objections and apply it at the proper time and place.

The eighteenth, nineteenth, and twentieth assignments of error state that the motion for new trial should have been granted because, when appellant asked leading and objectionable questions and when objection was made, appellee withdrew and did not insist on asking them, because counsel for appellee made side-bar remarks in the presence of the jury when objections to testimony were made, and "because of the conduct and statements of counsel for plaintiff to the effect that what he was trying to avoid was a bill of exception." Appellant does not object to any ruling of the trial judge, made when the questions were asked and withdrawn, and when side-bar remarks were made, nor when the conduct and statements of counsel took place, of which complaint is made; but the only complaint is that the court erred in overruling the motion for new trial because of those matters. It is not stated in the brief that such matters were presented to the court in the motion for new trial, and we might have contented ourselves with that omission and presumed that no such points were raised in the motion for new trial, but we have consulted the motion for new trial, and find that the questions presented by the three assignments of error were not mentioned in the motion. The action of the trial court in regard to the matters complained of have, therefore, never been obtained, and consequently the action of this court cannot be invoked thereon.

[16] The rule is that, where the trial judge has once acted upon a question, it is not presumed that he will change his ruling, but his action must be invoked in some manner before it can become a subject of revision in an appellate court. As said by the Supreme Court, in W. U. Tel. Co. v. Mitchell, 89 Tex. 441, 35 S. W. 4: "When the court overrules or sustains exceptions to the pleadings, admits or rejects evidence over objection properly presented and preserved, or gives, refuses, or qualifies instructions, it becomes a matter of record; it is the action of the court itself, and subject to revision." The action of the court, however, must be had at some time during the trial, before the appellate court can act. The case of Clark & Loftus v. Pearce, 80 Tex. 151, 15 S. W. 787, is also authority for the proposition that the appellate court can reverse only for error in the rulings of the court below. We cannot entertain the prop-

osition that this court can interfere with the judgment of a trial court for error in rulings that it did not make. No mention is made in the motion for new trial of the matters set out in the bill of exceptions, and in the latter no ruling of the trial court was invoked or obtained. The assignments are overruled.

[17] If the evidence offered by appellee is to be credited, he received painful and serious injuries from which he will never· recover. He was in bed for 15 weeks, and he suffered pains in the groin and back, his eyesight was bad, and his digestion greatly disturbed since the injuries were inflicted. He had slept very little since the injury, and cannot lift a chair; and he testified that he was a physical wreck, and his left leg felt as though it was nearly paralyzed. He has a double rupture; the one on the left side being what is called by physicians a direct inguinal hernia. Dr. Shropshire stated that the hernia on the right side "is a very unusual form, by which the gut starts through the abdominal wall and comes in and out." The doctor testified that he had called to see appellee immediately after the injury, and that he "had been suffering intensely from the shock at that time, and has been gradually growing worse, growing very much more feeble, and is a much more feeble man than he was at that time. * * * He is not able to perform physical labor in the condition he is in. He is not able to do anything. * * * His condition is permanent beyond any question." Appellee is a lithographer, and had an earning capacity of $21 a week. It is true that appellee was 55 years old when hurt, but we are in no position to hold that the amount of damages found by the jury was excessive. There is no fixed rule for estimating damages arising from pain and permanent injuries, and we cannot substitute our judgment, under the facts of this case, for the finding of the jury and judgment of the trial court.

The judgment is affirmed.