**GOLDSTEIN HAT MFG. CO. v. COWEN et al.**

No. 12802.

Court of Civil Appeals of Texas. Dallas.

Dec. 16, 1939.

Rehearing Denied Feb. 10, 1940.

Emil Corenbleth, Dallas C. Biggers, Chandler Lloyd, and Donald L. Case, all of Dallas, for defendants in error.

YOUNG, Justice.

The suit below was for damages sustained by plaintiff, Charles Cowen, as a result of falling into an elevator shaft located in a three-story building on Commerce Street, Dallas; defendants being Goldstein Hat Manufacturing Company, lessee of the third floor, R. Tobolowsky, trading as True Fit Uniform Company, lessee of the second floor, and Royal Investment Association, Inc., owner of said building. Following the jury verdict, judgment was rendered against the Goldstein Hat Manufacturing Company for $5,190, from which it alone has appealed; the trial court concluding in its final decree that plaintiff should take nothing as against the other defendants.

The accident occurred on the first floor of the premises, plaintiff stepping into the elevator shaft from said landing and falling to the bottom of the elevator pit, some eighteen feet below. The two tenants aforesaid were business concerns having daily shipments of express, which were picked up by plaintiff for transportation through his employer, the Railway Express Agency. Briefly, plaintiff's petition discloses, that on the occasion in question, October 22, 1937, about 5:30 in the afternoon, he went to the building occupied by such tenants for the purpose of gathering shipments, making customary use of the freight elevator that serviced the second and third floors; that as he went into the building, there was no light burning in the small lobby entrance leading to the elevator; that when he raised the slide gate and stepped onto the elevator, neither it nor the shaft was lighted. Plaintiff further alleged that he went up to the second floor to get a shipment from the True Fit Company, but without success, whereupon, employes of the third floor (Goldstein Company) were called to turn on a light, which was done; that he was then requested to go to the third floor for some express and, finding same too large for one load, he took part thereof down the elevator to his truck, notifying Goldstein Company workmen that he would return for the balance; that when he came back, there was again no light; that he again raised the gate adjacent to the elevator and shaft, believing the machine was still at

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for plaintiff in error.

the first floor landing; alleging also that he believed said gate to the elevator would not raise unless the floor thereof was at such landing; and being further unaware that it was not equipped with a saftey device to prevent the gate from moving unless the elevator was in position for use. Plaintiff then averred that the elevator was not at the first floor when he attempted to step thereon, resulting in his fall and injuries. Defendants were charged generally with negligence, jointly and severally, in failing to have lights in the elevator shaft and entrance-way, also, in failing to have a proper locking device on the elevator gate; that the Goldstein Company was further at fault in moving the lift from the first floor when it knew plaintiff would be back for the rest of such Company's express. Defendant tenants denied responsibility for plaintiff's injuries, asserting that under their separate leases, each tenant had no control or duty as to the elevator or its condition, except as to their respective floors; the occupant of the second floor, True Fit Company, pleading over against the Goldstein Company, claiming the sole cause of the accident was the moving of the elevator between plaintiff's two trips to the building. Many acts of contributory negligence were alleged against plaintiff, which are best shown in the jury issues and verdict. The building owner, Royal Investment Association, Inc., denied all liability under the terms of its separate leases with the other defendants, praying for judgment over against said lessees in event of plaintiff's recovery. All defendants filed motions for instructed verdict at the close of the testimony, which were refused.

The issues and verdict of the jury thereon were, in substance, that: Defendants, at said time and occasion, failed to have a locking device in operation for the elevator gate at the first floor landing, which was negligence and a proximate cause of plaintiff's injuries; defendants failed to have the entrance to the elevator on the first floor landing lighted, which was negligence and a proximate cause of the injuries; plaintiff's failure to press the elevator button at the time to find out the location of the elevator was not negligence; plaintiff's failure to feel for said elevator before stepping out into the shaft was not negligence; the lifting of the elevator gate by plaintiff without first discovering whether the elevator was on the first floor was not negligence; the entrance-way on the first floor at the elevator was not pitch dark on said occasion; plaintiff's failure to attempt to secure any light before attempting to enter the elevator was not negligence; plaintiff was familiar with the conditions at said time and place by reason of prior visits, but did not thereby assume the risk incident to his entrance into said building; the light on the third floor of the building, in the elevator shaft, was not burning at the time of plaintiff's fall; said third floor light, when burning, would shine down past the sides of the elevator and throw some light in the elevator shaft at the first floor; the lights in the glass meters on the first floor of the building gave no light on said floor; the lights from the building outside, and the street corner, gave some light into the entrance-way on the first floor; the moving of the elevator from the first floor after plaintiff's first visit and prior to his second trip, was not a proximate cause of the accident; nor was it an intervening cause, or a new and independent cause, or the sole proximate cause thereof; that the failure to have the ceiling light on the first floor in condition to operate was negligence and a proximate cause of the accident, but not the sole proximate cause; the light on the second floor in the elevator shaft was not burning, but was not negligence; that the elevator was properly constructed and in repair, but that the elevator gate on the first floor was not in proper repair. Plaintiff's injuries were not the result of an unavoidable accident. There was no light switch on the first floor by which the elevator light on the second floor could be turned on; plaintiff's going into the first floor lobby while same was dark, was not negligence; plaintiff's stepping into the dark shaft without first knowing that the elevator was on the first floor, not being negligence; that the elevator gate was not difficult to open, and that plaintiff's opening said gate under the circumstances was not negligence. Plaintiff's failure to ascertain whether said elevator had been moved during his absence was not negligence; that plaintiff's failure to press the elevator button did not proximately cause, or contribute to his said injuries; that he did not fail to keep a proper lookout; that the light in the elevator shaft on the third floor was burning when plaintiff left to go to the express office, but was turned off during his absence by an employe of the Goldstein Hat Manufacturing Company; that the turning off of said light was not the sole proximate cause of plaintiff's injuries,

but was a new and independent cause thereof; the entrance lobby of the building was not sufficiently lighted for plaintiff to see that the elevator was not on said first floor; that plaintiff, by the exercise of ordinary care, could not have observed the danger of being injured by falling down the shaft, before he opened the gate; nor by the exercise of ordinary care after raising the gate, could plaintiff have observed the danger of being injured by falling down said shaft. Damages were found in the sum of $5,000, plus $190 of medical and hospital bills.

Defendant Goldstein Hat Manufacturing Company thereafter filed motion for mistrial, based on alleged conflicts in the jury answers; also motion for judgment non obstante veredicto. The other defendants filed separate motions for judgment, which were by the court sustained, those of the Goldstein Company were overruled, judgment being rendered against the latter, as already stated, from which it has prosecuted this appeal by petition for writ of error. Said plaintiff in error will be here termed appellant, and Charles Cowen, defendant in error, will be referred to as plaintiff, to avoid confusion. No exception or appeal was taken by plaintiff Cowen to the trial court's finding against him and in favor of the building owner, Royal Investment Association, Inc., and the second floor tenant, True Fit Uniform Company, as to their liability; Goldstein Hat Manufacturing Company, appellant, taking due exceptions and making such action of the court, in part, the basis of its present complaints.

The gate to the elevator on the first floor was of wood, the machine moving by electricity, a button being within the cage for the operator, and at the several landings. When the elevator was not on the first floor, a constant pressure on the outside button would bring it down, at the same time, according to some, giving a red signal. There was no particular dispute in the fact situation surrounding the accident, save in whether the lights were burning in the shaft from the second and third floors; the lighting facilities on the first floor; and relative to the locking device on the ground floor gate being in repair; i. e., whether said gate could be raised with much difficulty, or at all, unless the elevator was at the same landing. A stairway ran to the upper floors from another part of the building, but plaintiff's regular visits to appellant's premises and those of the True Fit Company were made by way of said elevator, using it to carry down shipments that might be delivered to him for transportation by the Railway Express Agency. The elevator was for use of both defendant tenants, they having an arrangement as to paying costs of its operation. The lease of each tenant with the building owner provided, in part: "7th. That the lessor shall not be liable to lessee or to lessee's employes, patrons, or visitors, for any damage to person or property, caused by the act or negligence of any other tenant of said demised premises, or due to the building on said premises or any appurtenances thereof being improperly constructed, or being or becoming out of repair, nor for any damage from any defects or want of repair of any part of the building of which the leased premises form a part, but the lessee accepts such premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and waives defects therein and agrees to hold the lessor harmless from all claims for any such damage." Under the terms of these agreements of lease, and the testimony, it is clear that the lessor defendant retained no kind of control over said upper floors of the building, or the elevator and entrance-way on the first floor; the Goldstein Company and the True Fit Company being the only parties having any use for, or deriving any benefit from, said freight elevator. However, the condition of the elevator and the gates to the shaft on each floor appeared, under the evidence, as being the same as when they were leased to such tenants some two years before. Plaintiff's explanation for walking through the dark first-floor lobby to the shaft, raising the gate and falling, is that, he believed that the elevator was on the ground floor where he had left it on his first trip; also, he thought the guard or gate would not raise unless the elevator was there.

It is the substance of appellant's first fourteen propositions that plaintiff's conduct constituted contributory negligence as a matter of law, the undisputed evidence showing that he, being thoroughly familiar with his surroundings, knowingly entered an unlighted elevator entrance, felt his way back to the elevator guard, raised the same and stepped off into space, without attempting to ascertain the location of the machine, or to secure a light for such purpose, taking no precautions whatever for his own safety and wilfully placing himself in said position of danger; in other words,

that plaintiff's own statement disclosed a total absence of care, precluding a recovery, and the court should have so instructed the jury.

■ It is true that plaintiff passed through the darkened entrance lobby to the elevator shaft, there being no lights at said location within his knowledge (as he testified) that could be turned on. He was guilty of the acts of omission indicated in the jury answers, under the belief, as he said, that the gate would not raise "unless the elevator was there"; also believing that the machine was in the position he had left it on the occasion of his first visit. The accident occurred around six-thirty in the evening. It was plaintiff's own testimony that no light was on in the building when he came back. He said: "I figured that they turned the light out like it was when I first went there, that's what I thought, leaving the elevator down where it was. * * * I wondered why they turned the elevator light out knowing I was coming back and knowing I had signed for the express, that which I couldn't carry, he told me that I would also have more as soon as he could pack it." Weighing all the evidence most favorably toward the one charged with the want of care, which we must do against a peremptory instruction, we cannot say that plaintiff's conduct was negligent as a matter of law. Whether plaintiff exercised ordinary care under all the circumstances was for the jury, unless it can be said that his particular acts and omissions were so opposed to the dictates of common prudence as that no reasonably careful man would have so acted. 30 Tex.Jur. Sec. 153, p. 832; Gulf, C. & S. F. Ry. v. Gascamp, 69 Tex. 545, 7 S.W. 227. Also, Jacobs v. Bailey, Tex.Civ.App., 118 S.W.2d 484, writ dismissed, is quite similar in fact and principle. Appellant's Texas cases, in support of its propositions for peremptory instruction, generally involve injuries from dangers as obvious or as well known to the injured person as to the adverse party; and are, hence, distinguishable.

■ Appellant's nine further propositions are, in substance, that certain answers of the jury to questions involving plaintiff's negligence, were so contrary to the overwhelming weight and preponderance of the evidence as to show passion and prejudice. We have already concluded, in effect, that there was some evidence to support these findings, and the mere fact that same are against the preponderance of the testimony does not authorize the Appellate Court to set them aside. 3 Tex.Jur. (Appeal and Error-Civil Cases) Sec. 769, pp. 1097, 1098. "The general rule announced by our Supreme Court is that, in order to justify such action, it must appear that such finding is without any substantial support in the evidence, or that it is against such an overwhelming preponderance of the evidence as to indicate that the jury were influenced by improper motives, or that manifest injustice has been done or that the same is clearly wrong". Oden v. Mc-Adams, Tex.Civ.App., 108 S.W.2d 920, 922. These assignments must likewise be overruled.

■ Appellant's twenty-fourth proposition urges that its motion for judgment non obstante should have been granted, because, neither under the evidence, nor jury verdict, was there any duty upon this defendant to maintain the elevator in question; that the Goldstein lease covered only the third floor with no provisions in anywise giving him any separate possession or control; the landlord, Royal Investment Association, Inc., being responsible for the upkeep of that part of the building, as to which the tenants have only a common use. As we construe the separate leases between the building owner and these second and third floor tenants, the covenants of each lessee were to keep their said premises in good repair, providing against liability "due to the building * * * or any appurtenances thereof being improperly constructed, or being or becoming out of repair, nor for any damage from any defects or want of repair of any part of the building *of which the leased premises form a part,* but the lessee accepts such premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and waives defects therein and agrees to hold the lessor harmless from all claims for any such damage". (Italics ours)

It appears, therefore, that the building owner, under these instruments, retained control over no part of the floors so leased, or appurtenances thereof, which would include the freight elevator; as the latter means of entry was obviously for the sole service and use of the tenants named. But, if we be mistaken in this, appellant's proposition of non-liability for the maintenance of the elevator is not tenable, because of plaintiff's status on the particular occasion,

as an invitee. "It is the business of the tenant, in the first instance, to see that the building and its approaches are safe for those coming there by his invitation, express or implied, and if he negligently permits the building or the access to it to be in an unsafe condition, he is liable for an injury occasioned thereby to such persons". 16 R.C.L. Landlord and Tenant, Sec. 614, p. 1096; Marshall v. Heard, 59 Tex. 266. "An invitee of a tenant enters the premises under the tenant's title, and has no greater right against the landlord than the tenant himself would have. The duty to repair and keep in repair, in the absence of a covenant to the contrary, rests upon him who has rightful possession" (citing authorities). Jackson v. Amador, Tex.Civ. App., 75 S.W.2d 892, 893.

Appellant's propositions 25 to 30, inclusive, complain of the form of issues 2 and 5, which read: (2) "Do you find from a preponderance of the evidence that the defendants, at the time and on the occasion in question, failed to have a locking device, in operation for the elevator gate at the first floor landing?" (5) "Do you find from a preponderance of the evidence that at the time and on the occasion in question the defendants failed to have the entrance to the elevator on the first floor landing lighted?" Contention is made of no pleading or evidence to warrant a finding of joint negligence, the subject of inquiry being the condition of the first floor as to light, and the locking device on the elevator gate; that the liability of each defendant was governed by different facts and rules of law; that Article 2189, R.S., required separate and distinct issues in determining the liability of parties situated as were the defendants, without intermingling; that, as framed, the issues were on the weight of the evidence, and assumed an equal liability on part of all defendants. Propositions 31 and 32 further point out that the failures of "defendants" in said issues (2 and 5) being found in subordinate issues to be negligence, proximately causing plaintiff's injuries, and such verdict having been received and filed, the court, under Article 2211, Vernon's Ann.Civ.St. art. 2211, could not ignore the findings of liability against all defendants and render judgment against Goldstein Company alone, especially so, in the absence of motions non obstante veredicto; being required by law either to render judgment on the verdict, or set same aside. Proposition 33 is with reference to issues 56 and 58, which are to the effect that the light on the third floor of the elevator shaft, turned off during plaintiff's absence, after his first trip to the building, by an employe of appellant, was a new and independent cause of plaintiff's injuries; the contention being that, under no theory of law could such facts be a new and independent cause, in the light of the jury's findings on issues 2 to 7, so as to excuse the other defendants from all responsibility. This immediate proposition (No. 33) should first be considered, as same is more or less determinative of the various propositions heretofore detailed, but not discussed.

▇▇ Obviously, issue No. 56 could not be a basis for recovery by plaintiff, not being plead, nor followed by necessary findings of negligence and proximate cause; and issue 58, that turning off the third floor light, by an employe of appellant, was a new and independent cause of plaintiff's injuries, was manifestly given at the instance of codefendants in an effort to shift liability. Counsel for appellant Goldstein and plaintiff Cowen agree that the jury answer to said issue 58 furnished the basis of the court's action in rendering judgment for the two other defendants and against appellant alone. That the court was not warranted in dismissing such other defendants perforce of this finding, is apparent from the definition of the term "new and independent cause", as given in the court's charge; also from a consideration of the pleading, the evidence and the jury verdict. Such cause contemplates that an independent force, instead of the alleged negligent acts of the parties, was responsible for the injuries complained of. Southland-Greyhound Lines, Inc. v. Cotten, 126 Tex. 596, 91 S.W.2d 326. The jury had already determined that "all defendants" failed to have the elevator entrance on the first floor lighted; or a locking device on the elevator gate at such landing; both constituting negligence and proximate cause. The rule is general that "The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from consequences of negligence, if such negligence directly and proximately co-operates with the independent cause in the resulting injury". Texas Power & Light Co. v. Culwell, Tex.Com.App., 34 S.W.2d 820, 821; Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294, writ refused. Viewing the jury answers as a whole, the

court's reason for dismissing the other defendants, on the basis of issue 58 alone, is not discernible. Issue 19 found that the third floor light, if burning, would throw some light in the shaft on the first floor. Had there been lights on the latter floor (which the jury said there were not), any illumination on the third floor would have been unnecessary; and had the locking device been in operation, as contended by plaintiff, the accident would not have occurred, irrespective of lights. The facts embodied in issues 19, 56 and 58, on adequate submission and answer, could be regarded only as a concurring cause of plaintiff's fall, and, as presented in the charge, must be considered immaterial.

Whether the elimination of co-defendants from liability has any other proper foundation under the facts of this record, is the next and natural inquiry. First, as to the Royal Investment Association, Inc., with its cross action over against appellant, and A. Tobolowsky (who had signed the True Fit Company lease, for and on behalf of that concern). Indisputably, this defendant, the building owner, was entitled to a peremptory instruction at the close of the testimony, which disclosed no retention of control over the premises leased, or the elevator servicing the building; the lessees covenanting in their separate contracts of tenancy, not only to keep their respective quarters in good repair, but also for indemnity to the landlord against personal damage sustained by lessees' patrons, "from any defects or want of repair of any part of the building of which the leased premises form a part". Said building owner was only a passive tort-feasor, from any construction of issues 2 to 7, assuming, if we may, that the upper floors were in the same condition on date of plaintiff's injuries, as when leased. Even under the common law, the right of contribution is available to a wrongdoer who is merely passively guilty, as against one who is actively culpable. In such case, "* * * the principal delinquent may be held responsible to his codelinquents for damages incurred by their joint offense." 13 Am.Jur., p. 42, Sec. 46; 10 Tex.Jur. (Contribution) Sec. 15, p. 554; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; City of San Antonio v. Smith, 94 Tex. 266, 59 S.W. 1109. Royal Investment Association, Inc., should have moved for judgment, notwithstanding the verdict, but its failure to do so, under the instant facts, we regard as harmless error, as a judgment against it would have resulted in the useless ceremony of a similar recovery in its behalf over and against all other parties defendant, shown to be active tort-feasors.

Unfortunately for the remaining defendant, True Fit Company, we are forced to conclude that its status as an exculpated party is more vulnerable. Although no jury issue was made as to such fact, the record conclusively reflects that plaintiff was, at the time and on the occasion in question, at least impliedly, an invitee of this concern. Prior to October 22, 1937, and regularly, plaintiff or other employes of the Railway Express Agency had visited the True Fit Company for shipments, using the same freight entrance and elevator. As a rule, shipments from this company were called for earlier in the afternoon than from the Goldstein premises, but plaintiff testified there was no certain time to visit either place. On the day of plaintiff's accident, as the testimony disclosed, the True Fit Company was not operating, but was taking inventory with only a small force; all packages being picked up by the Express Agency around noon, or not later than 4 P. M., the business closing around 4:30 P. M., all second floor doors locked, including the opening to the elevator. However, it was the testimony of plaintiff that his initial visit to the building around 5:30 P. M. was in response to a call from the True Fit Company. When he arrived and tried to attract their attention from the elevator, the Goldstein empoyes called to him from the third floor, with a considerable shipment, resulting in his second trip and fall. Referring to such last, or ill-fated, trip, plaintiff testified:

"Q. When you went back the second time you were going there to get some more packages from the Goldstein Hat Company? A. Yes.

"Q. That was your sole purpose? A. Yes, and I was supposed to see if anyone showed up at the True Fit Garment Company.

"Q. Did you see anybody there? A. I don't know, I never got to the door to find out."

We conclude that on the occasion of plaintiff's injuries, he was an invitee of both above tenants, on whom rested the duty of exercising ordinary care to see that their respective premises were in a reasonably safe condition, so that persons, such as plaintiff, who were there on invitation, express or implied, might not be in-

jured; the duty extending to reasonably safe means of ingress and egress. 45 C.J. (Negligence) Secs. 220, 237, 241, pp. 809, 827, 834; Morten Inv. Co. v. Trevey, Dallas, Tex.Civ.App., 8 S.W.2d 527; Foster Lumber Co. v. Rodgers, Beaumont, Tex. Civ.App., 184 S.W. 761; Aiken v. Sidney Steel Scraper Co., 197 Mo.App. 673, 198 S.W. 1139; Brody v. Cudahy Packing Co., Mo.App., 127 S.W.2d 7.

Both Goldstein Company and True Fit Company were found equally negligent, proximately resulting in plaintiff's injuries, under primary facts both plead and relied upon by him for a recovery. See issues 2 to 7. But plaintiff does not appeal from the judgment below, appellant alone complaining that the True Fit Company should jointly bear the liability imposed by the jury verdict. Counsel for said defendant, True Fit Company (or R. Tobolowsky), vigorously asserts that appellant has no legal right to complain, the proposition being that, Goldstein Company, a defendant in the trial court, and properly liable under jury findings, asking for no relief over against its codefendant, is not entitled to assign error to a judgment in favor of the other defendants, or to seek reversal or modification of the trial court's judgment as to them; citing, among other cases, Northern Texas Traction Co. v. Woodall, Tex.Civ.App., 294 S.W. 873, 877, reversed on other grounds, Tex.Com.App., 299 S.W. 220. In the case just cited, defendant Traction Company had plead over against Bonner in Woodall's suit for damages. Under jury issues, both defendants were found to be equally guilty as tort-feasors, judgment rendered in favor of Bonner with no exception by the plaintiff. These were the facts from which the court held that: " * * * we do not think that the appellant is in a position to complain of this action. The two defendants were alleged to be joint tort-feasors, and that their negligent acts, jointly and severally, or both, were the proximate cause of plaintiff's injuries. It is a well-settled rule that one of two joint active tort-feasors cannot recover of another likewise guilty of wrong."

The Woodall case, however, in view of the jury findings, is authority for the denial by the lower court of the True Fit Company's cross action for indemnity against appellant, both being equal tortfeasors under issues 2 to 7, already discussed. In this situation, therefore, and as Art. 2212 has been construed, appellant has been deprived of a valuable right in the release by the trial court of codefendant True Fit Company; for appellant was entitled to have such party retained in the cause as a basis for statutory contribution. Gattegno v. The Parisian, Tex.Com.App., 53 S.W.2d 1005.

Returning briefly to a consideration of propositions 25 to 30, arguing error in failing to submit special issues 2 and 5 as related to each defendant, we conclude the effect of the court's submission was to elicit single facts, without reference to any consequent responsibility. The inhibition of Art. 2189 against intermingling of issues is recognized, but all parties to this cause must agree that the record facts are somewhat unusual. More than one of the various defense witnesses admitted there was no light on the entrance floor, the testimony of others being negative. Similar negative testimony appears as to the locking device on the first floor elevator gate, and the fact that plaintiff raised it and fell demonstrates, at least, some defect in such device. The inclusion of "defendants" in the particular issues was but surplusage, we think, just as the same expression would be, in an issue involving the condition of a street car door, the vehicle shown conclusively to be under maintenance and control of two traction companies. These propositions are each overruled. Appellant's propositions 34 to 40, inclusive, have already been discussed.

Propositions 41 through 44 complain of a statement by the court to the jury after their discharge, and before they had left the court room, as follows: "Now, gentlemen of the jury, you can discuss this case with anyone you like now, but if you don't want to get a one dollar bill given to you and brought back here again, and if you don't want to spend two or three days on this matter, you had better not talk and you had better keep your mouths shut and not talk to anyone." The bill of exceptions further disclosed that the jury, during the course of its deliberations, had written a note to the trial judge, asking, in substance, the effect of findings by them of negligence on the part of both plaintiff and defendants; the court advising them, in open court, that he could not answer their question, no exception being taken to this incident at the time. Also was set forth in the bill, testimony of A. O. Grissom, an investigator for defendants, to the effect that he had attempted to in-

terview all jurors in the case, each of whom had refused to give any information as to their deliberations. It is argued that the court's instructions tended to suppress facts of misconduct, which, if same existed, defendants had a right to develop. Art. 2234, R.S. No attempt was made to bring the jurors into court for interrogation in support of the motion for new trial. The jury were told that they were free to talk as they pleased about the case, then being generally advised as to the result of ex parte statements. The remarks of the court are disapproved, as having a tendency to conceal misconduct, whereas, the jury should be left free to make full disclosure of their deliberations touching possible irregularities. It is immaterial that the jury discussed the effect of their answers, if they, in fact, have answered all questions solely from the viewpoint of the evidence. 41 Tex.Jur. (Trial Civil Cases) Sec. 347, p. 1212. Whether or not the antecedent jury note evidenced misconduct, was properly determinable under the statute; and defendants were in nowise denied the right of such procedure.

Appellant's propositions 45 and 46 show that a certain city ordinance and rules, previously admitted at the instance of plaintiff, defendants objecting, were later withdrawn from the consideration of the jury on plaintiff's request; the court instructing the jury to disregard the same, but indicating a belief that the instruments were admissible. Appellant's objection then made was: "* * * that the evidence has already been placed before the jury and is of such nature that, in our opinion, it cannot be erased from their minds by thus being instructed not to consider it"; whereupon, the court unqualifiedly instructed the jury not to consider such evidence. Appellant's brief enlarges upon the grounds stated in the exception regarding the above matters (no former bill of exceptions having been preserved), so review will be limited to the objection as shown in the statement of facts. There is nothing to indicate injury to defendants from such withdrawal of the evidence, Freeman v. Cleary, Tex.Civ.App., 136 S.W. 521, writ denied; the jury issues bearing only on common law liability. Appellant's 47th

proposition of law is grounded upon the refusal to submit issues 7 and 8, inquiring if the admitted failure of plaintiff to call up the elevator shaft to those above, to find out the location of the elevator, was negligence and a proximate cause of the accident. No error is shown in such action of the court. The issue is indefinite in form, and, if referring to the second trip, assumed a knowledge by plaintiff that employes of the defendants were on the upper floors, a fact not conclusively reflected by the testimony. Besides, the court's charge sufficiently comprehended the gist of such defensive issue. Propositions 48, 49 and 50 can be properly overruled without comment, because the particular definition and issues have already been discussed.

It is our conclusion that the judgment of the trial court, in favor of Charles Cowen against Goldstein Hat Manufacturing Company, should be affirmed; also reformed in the respect herein stated. Plaintiff having sued the defendants, Goldstein Hat Manufacturing Company and R. Tobolowsky (trading as the True Fit Uniform Company), seeking to establish a joint and several liability, and the jury having found facts making it simply a ministerial duty of the court to render judgment against both defendants, jointly and severally; but the court, under a mistaken view of its duty in the premises, having rendered judgment alone against appellant, discharging defendant Tobolowsky from all liability, that fact should not, in our opinion, affect or defeat appellant's right to contribution against Tobolowsky. Appellant having complained of the action of the court in the respect just mentioned, praying for relief, we think the judgment should be reformed by recognizing and establishing appellant's right to contribution against R. Tobolowsky (trading as True Fit Uniform Co.), as authorized by Article 2212, R.C.S., to the extent of one-half of any amount appellant is compelled to pay on said judgment, and it is so ordered; and that, to avoid a multiplicity of actions, appellant is entitled to execution against R. Tobolowsky, to compel contribution to the extent authorized, as just mentioned.

Reformed and affirmed.