**PRODUCERS CHEMICAL COMPANY,**
Appellant,

v.

**WELL COMPLETIONS, INC., Appellee.**

No. 7336.

Court of Civil Appeals of Texas.

Amarillo.

May 18, 1964.

Rehearing Denied June 22, 1964.

 

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellee.

NORTHCUTT, Justice.

Originally, Billy Allen Stamps and A. H. Burnett brought separate suits against Producers Chemical Company for personal injuries caused from an explosion. The two suits were later consolidated for trial. Producers Chemical Company impleaded Well Completions, Inc. seeking contribution and/or indemnity. Well Completions, Inc. sought a severance from the Stamps and Burnett case. The severance was allowed by the court and was filed in Cause No. 1201 and styled Producers Chemical Company vs. Well Completions, Inc. Well Completions, Inc. made a motion for an instructed verdict in its favor. The motion was granted and the jury returned a verdict as directed and judgment was entered by the court that Producers Chemical Company be denied recovery and take nothing by reason of its complaint against Well Completions, Inc. From that judgment Producers Chemical Company perfected this appeal.

This appeal is presented upon three points of error. All three of the points involve the question of whether there was a fact issue for determination with respect to whether the appellee was a joint tortfeasor from whom appellant was entitled to contribution under the provisions of Article 2212, R.C.S. and whether the trial court erred in directing a verdict in favor of appellee.

If there were sufficient facts showing joint tortfeasors the appellant was entitled to have the appellee retained in the original suit and would be deprived of a valuable right by the court granting a severance and then instructing the verdict for the appellee. Goldstein Hat Mfg. Co. v. Cowen, Tex.Civ.App., 136 S.W.2d 867 (error dismissed).

Canadian River Drilling Company first commenced drilling operations at a well site some eight to ten days prior to the explosion in question and drilled with mud for three or four days before it was decided to continue drilling with air in lieu of mud. Mud or air would be forced under pressure into the well hole to circulate through the hole and remove any cuttings or fluid that accumulated in the hole. At the time in question they had made about seventeen hundred feet of hole with mud and surface pipe had been set. Up to this point neither Well Completions, Inc. nor Producers Chemical Company had arrived on the job. At some time prior to the explosion in question, Well Completions, Inc. moved onto the location with what has been described in the statement of facts as a small air compressor for use by Canadian River Drilling Company in their drilling operations. Canadian River Drilling Company was the one drilling the well for whom Stamps and Burnett were working. It was at this point that Canadian River Drilling Company switched from mud drilling operations to an air drilling operation. A man by the name of Lloyd Jones, an employee of Well Completions, Inc., was in charge of and operated the compressor furnished by Well Completions, Inc. Appellee came on the job pursuant to a written contract with Canadian River Drilling Company which read in part as follows: "We, Well Completions, Incorporated, in rendering services requested by the customer, do so as an Independent Contractor, recognizing that at all times the customer has complete custody and control of the well, the conditions created in the well, the drilling equipment and the well premises." Appellee had no responsibility on the job other than the operation of its compressor under the direction and guidance of the employees of Canadian River Drilling Company but in fact never undertook to do anything in connection with the drilling operations other than operate their own compressor and to furnish air from such compressor when requested by the employees of Canadian River Drilling Company.

After making some fifteen hundred to seventeen hundred feet while using air, the employees of Canadian River Drilling Company started out of the hole and got stuck. After getting unstuck it was necessary to clear the hole of water and other fluid and it developed that the appellee's compressor could not develope sufficient pressure to clear it.

H. F. Sears acting on behalf of Canadian River Drilling Company realized that more pressure would be needed in order to clear the fluid from the hole. He knew that Producers Chemical Company had a compressor in the vicinity of Pampa or Borger, Texas, having used it himself on prior occasions both with and without an operator being furnished by Producers Chemical Company. He, therefore, contacted a Mr. Moore, station manager for Producers Chemical Company's station, and arranged to have the Producers Chemical Company compressor brought to the location. Mr. Moore in turn notified a Mr. McDonald, an employee of Producers Chemical Company, and he along with two other employees of Producers Chemical Company brought the compressor to the well site on March 13, 1959. Neither Mr. Jones nor anyone associated with the appellee participated in any way in arranging for the presence of the Producers Chemical Company's compressor.

Mr. Jones testified that he was not familiar with the compressor brought on the location by Producers Chemical Company; was not familiar with the Manzell oiler which was the lubricating device used by appellant; did not consider it his obligation to inspect the type of equipment that Mr. Sears had sent for and did not in so far as he knew have any authority to tell the man that was operating the compressor what to do with it, how to hook it up or anything else and did not feel any obligation to determine whether or not the equipment could

be safely used in air drilling as he did not know anything about it.

On arriving at the well site, Producers Chemical Company's employees, with possible assistance from Mr. Sears, disconnected appellee's line from the well rig and connected the Producers Chemical Company compressor to a line which ran from the Producers Chemical Company compressor to the well rig. They then connected a line running from Well Completions, Inc.'s compressor to the Producers Chemical Company compressor. This operation took place after a joint conference between Sears and McDonald in which Mr. Sears explained the problem to Mr. McDonald and what was needed to be accomplished. No representative of Well Completions, Inc. was present at this conference. Thereafter the air operation was conducted under the joint supervision of Mr. Sears and Mr. McDonald with Mr. Sears taking the lead in making necessary decisions. No employee of Well Completions, Inc. assisted in the hooking up of the lines or any way supervised, controlled or participated in the operation.

Appellant's employee would signal appellee's employee when he was ready and how much air appellant's compressor could take and appellee's employee furnished the amount of air requested by appellant's employee. Appellee not having any connection whatever with the entire transaction and not connected with the well rig in any way and only furnishing the amount of air to appellant when as requested by appellant, we believe, and so hold, the trial court was authorized in granting a severance and instructing a verdict for the appellee. It is stated in Pure Oil Company v. Fowler, Tex.Civ.App., 302 S.W.2d 461 (N.R.E.) as follows:

"Appellant's fourth point complains because the trial court severed appellee's cause of action against appellant and First National Bank in Dallas from the remainder of the case. We see no harm resulting to appellant from the severance. The various cross-actions and third-party actions may involve extended litigation which might well delay, though it would not defeat appellee's right to recover. Under Rules 41, 97(h) and 174, T.C.P., trial courts are vested with large discretion in the matter of severance and separate trials of causes of action. McGee v. McGee, Tex.Civ.App., 237 S.W.2d 778. The severance here certainly was not an abuse of discretion. Appellant's fourth point is overruled."

Finding no reversible error, the judgment of the trial court is affirmed.