**Tamara McCABE, Plaintiff,**

**v.**

**HENPIL, INC., et al., Defendants.**

**No. 1:95 CV 118.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 21, 1995.

Gilbert T. Adams, Jr., Law Offices of Gilbert T. Adams, Beaumont, TX, for Tamara McCabe.

David Lynn Phillips, Phillips & Akers, Houston, TX, for Henpil, Inc.

David Lynn Phillips, Kevin Gerard Corcoran, Phillips & Akers, Houston, TX, for Kroger Co.

Gerald Wayne Riedmueller, Paul Anthony Scheurich, Benckenstein Norvell & Nathan, Beaumont, TX, for Versa Corp., Integrated Material Handling Co.

Robert A. Rose, Heather V. Kimmons, Klineman Rose & Wolf, P.C., Indianapolis, IN, for Oak Mgt. Corp.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND

SCHELL, Chief Judge.

Before this court are Plaintiff's "Motion to Remand" and "Supplemental Motion to Remand" filed on April 5, 1995, and April 18, 1995, respectively. In response, Defendants, The Kroger Co. ("Kroger") and Henpil, Inc. ("Henpil"), filed "Kroger's Reply in Opposition to Plaintiff's Motion to Remand and Brief in Support of Kroger's Notice of Removal and Henpil's Motion to Dismiss" on April 24, 1995. Subsequently, Plaintiff filed her "Response to Kroger's Reply in Opposition to Plaintiff's Motion to Remand" on May 4, 1995. In her "Supplemental Motion to Remand," Plaintiff also adopted and incorporated by reference the allegations and facts found in "Plaintiff's Response to Henpil, Inc.'s Motion to Dismiss" which was filed on April 17, 1995. Upon consideration of these motions, responses, replies, exhibits and memoranda of law, this court is of the opinion that Plaintiff's motion should be DENIED.

### I. FACTS

Plaintiff was an employee of Kroger assigned to the seafood department at a store located in Beaumont, Texas. During the course and scope of her employment, Plaintiff allegedly hurt her back while pulling or pushing a four-wheeled freight cart. According to Plaintiff's allegations, while pushing the cart through the storage area of the Kroger store, "[o]ne or more wheels on the cart seemed to suddenly lock up as Plaintiff was pushing it over a drain on Defendants' premises, resulting in injuries to the Plaintiff's back and body in general as she jerked and strained to control the cart." *Plaintiff's Second Amended Original [sic] Complaint,* ¶ 14. Because of this injury, Plaintiff brought suit. Originally, Plaintiff's suit was filed in state court and alleged various claims of negligence against Kroger. Subsequently, Kroger removed the lawsuit to this court.

To destroy diversity jurisdiction, Plaintiff moved to amend her petition and join Henpil as a defendant or, in the alternative, to voluntarily dismiss the action under Rule 41(a) of the Federal Rules of Civil Procedure. While this court denied Plaintiff's request to amend her complaint, the court granted Plaintiff's request to voluntarily dismiss her action in an order signed on August 19, 1994.

Plaintiff refiled this action in state court on January 19, 1995. In its second incarnation, Plaintiff's action materialized in a more evolved form. This second action named Kroger, Henpil, Integrated Material Handling Company, Versa Corporation, Oak Management Corporation and Village Oak Management Corporation as defendants. Against these defendants, Plaintiff raised multiple claims of negligence and intentional infliction of mental anguish. However, once again, Defendants removed Plaintiff's action to this court on March 6, 1995. In their notice of removal, Defendants alleged that this court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. But in response, Plaintiff argues that this court does not have subject matter jurisdiction over this action under either section.

### II. FEDERAL QUESTION JURISDICTION

Defendants argue that Plaintiff's intentional infliction of emotional distress and mental anguish claim ("IIMA") invokes this court's federal question jurisdiction under ERISA. In her complaint, Plaintiff alleges:

Additionally, after the injury to Plaintiff, THE KROGER CO., Individually and d/b/a "Kroger Food Stores", apparently set upon a course of action and conduct to intentionally inflict emotional distress and mental anguish upon her for which Plaintiff is entitled to exemplary damages in addition to actual damages produced by the original injury. The Defendants' actions which give rise to this cause of action, including the denial of Plaintiff's injury, trying to set up a defense to her claims by demanding that she see a doctor who would give medical reports favorable to the employer's position of denial of injury, re-

fusal to pay reasonable and necessary medical treatment and refusal to pay Plaintiff any lost wages proximately resulted from this injury.

*Plaintiff's Second Amended Original Complaint,* ¶ 25. Defendants assert that this particular claim is preempted by ERISA and, hence, the entire action may be removed under 28 U.S.C. §§ 1441 and 1367.

■ In 29 U.S.C. § 1144, Congress established that ERISA is preemptive over state laws "insofar as they may now or hereafter relate to any employee benefit plan described in [29 U.S.C. § 1003(a) ] and not exempt under [29 U.S.C. § 1003(b) ]." 29 U.S.C. § 1144(a). Courts have given Section 1144 an expansive interpretation and broadly construe the preemptive scope of ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1328 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). Under this construction, a state law claim is preempted whenever the state law has "a connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Nevertheless, ERISA will not preempt a state law claim which relates to an employee benefit plan which is "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3). This exception, however, will only apply to plans which are "separately administered" and provided "solely to comply" with applicable state law. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 106–08, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983).

■ Although The Kroger Co. was not a subscriber to workers' compensation insurance in Texas, Kroger did have a plan entitled the "Texas Occupational Injury or Disease Benefits Plan" (hereinafter "Plan"). *See Kroger's Reply in Opposition to Plaintiff's Motion to Remand and Brief in Support of Kroger's Notice of Removal and Henpil's Motion to Dismiss* (hereinafter "*Kroger's Reply to Remand*"), Exhibit B. This Plan offers benefits to Texas Kroger employ-

ees that "experience an accidental on-the-job injury or occupational disease in the course and scope of [their] employment with The Kroger Co ... and in the furtherance of Kroger's business...." *Id.* at 1.

■ Plaintiff's state law negligence and strict liability claims seek damages for her personal injuries rather than benefits under the plan. Hence, these claims do not have the necessary connection with or reference to Kroger's plan, and, therefore, these claims do not "relate to" Kroger's plan. Consequently, these claims are not subject to preemption. *See Hook v. Morrison Milling Co.,* 38 F.3d 776, 784 (5th Cir.1994); *Pyle v. Beverly Enterprises–Texas, Inc.,* 826 F.Supp. 206, 210 (N.D.Tex.1993); *Gibson v. Wyatt Cafeterias, Inc.,* 782 F.Supp. 331, 334–35 (E.D.Tex.1992); *Eurine v. Wyatt Cafeterias, Inc.,* No. 3–91–0408–H, 1991 WL 207468 (N.D.Tex. Aug. 21, 1991). However, Plaintiff's IIMA claim appears to "relate to" the Kroger plan. This claim apparently complains of the Kroger's behavior in applying the plan and apparently seeks plan benefits. Paragraph 25 of Plaintiff's Second Amended Original Petition complains of Kroger's "refusal to pay reasonable and necessary medical treatment and refusal to pay plaintiff any lost wages," refusal to provide "wage supplementation" and refusal to pay for "reasonable and necessary medical care while Plaintiff was in desperate need...." The Fifth Circuit has stated that a state law claim will sufficiently relate to a plan when "(1) the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (2) the claim directly affects the relationship among the traditional ERISA entities...." *Hook,* 38 F.3d at 781. Plaintiff's IIMA claim necessarily embraces her right to receive benefits under the Kroger plan and directly affects the relationship between Plaintiff/beneficiary and the plan administrators/fiduciaries. Therefore, this claim "relates to" the Kroger plan. *Pyle,* 826 F.Supp. at 211.

■ As stated above, ERISA will not preempt a state law claim, such as the intentional infliction of emotional distress, which "relates to" an employee benefit plan if that

plan is "maintained solely for the purpose of complying with applicable workmen's compensation laws." 29 U.S.C. 1003(b)(3). According to *Shaw*, for the Section 1003(b)(3) exception to apply, the plan also must be "separately administered." *Shaw*, 463 U.S. at 108, 103 S.Ct. at 2905. This requirement ensures "that a single benefit plan will not be subject to inconsistent state and federal regulations." *Gibbs v. Service Lloyds Insurance Co.*, 711 F.Supp. 874, 879 (E.D.Tex.1989) (citing *Shaw*, 463 U.S. at 107–08, 103 S.Ct. at 2905). In determining whether a plan is "separately administered," there are no set criteria. However, in a case dealing with a workers' compensation insurance policy, the court in *Gibbs v. Service Lloyds* enunciated a three part test. *Gibbs v. Service Lloyds Insurance Co.*, 711 F.Supp. 874, 879 (E.D.Tex.1989). The test inquires whether: (1) the workers' compensation insurance is provided through a different carrier from the insurance carrier which provides all other types of insurance; (2) the workers' compensation carrier exercises sole authority to manage premium income and funds and to approve or deny workers' compensation claims, and; (3) the employer acts as a mere conduit for the transmittal of premiums between employees and insurance carrier. *Id.* Without more information on the Kroger plan and how it is administered, it is difficult to determine whether the *Gibbs'* three part test or a derivation thereof should be utilized in this case.

■ It is important to note that the burden of establishing federal jurisdiction is placed on the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Additionally, any ambiguities are generally construed against removal. *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979). While Defendants have the burden of showing that Kroger's Plan is not exempt from ERISA preemption under Section 1003(b), they have failed to meet this burden. Defendants have failed to show that Kroger's plan was not "separately administered." Without such a showing, Defendants have failed to convince this court that Plaintiff's claim relates to a plan which falls within the umbrella of ERISA preemption notwithstanding Section 1003(b)(3). Nevertheless, this court need not decide whether it may exercise subject matter jurisdiction based on ERISA and federal question jurisdiction. A decision on this question is currently unnecessary because diversity jurisdiction under 28 U.S.C. § 1332 exists.

## III. DIVERSITY JURISDICTION

■ Defendants also claim that this court may exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. A district court has original jurisdiction over all civil actions that have an amount in controversy exceeding $50,000 and that are between "citizens of different States." 28 U.S.C. § 1332(a)(1) (1986 & Supp.1994). Diversity under Section 1332 must be complete; each plaintiff must be diverse from each defendant. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). In addition, even if diversity is present, removal on the basis of diversity is prohibited if one of the defendants who is properly served and joined is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b) (1988). Plaintiff argues that this action should be remanded because complete diversity does not exist. In support thereof, Plaintiff argues that (A) Kroger's principal place of business is in Texas, (B) Henpil is a citizen of Texas, and (C) Henpil's citizenship should be imputed to Kroger.

### A. *Kroger's Principal Place of Business*

Plaintiff argues that complete diversity does not exist because both she and Kroger are citizens of Texas. Specifically, Plaintiff contends that Kroger's principal place of business is in Texas. While it is not disputed that Plaintiff is a citizen of Texas, Kroger refutes Plaintiff's assertion that its principal place of business is Texas.

■ For the purposes of 28 U.S.C. § 1332, a corporation is deemed a citizen of the state of the corporation's incorporation and the state of the corporation's principal place of business. 28 U.S.C. § 1332(c)(1). Although a corporation's state of incorporation is easily determined, a corporation's principal place of business is not as readily discovered. To determine a corporation's principal place of business, the Fifth Circuit

applies the "total activity" test. *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 406 (5th Cir.1987). At the foundation of this test lie three basic precepts:

(1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business;

(2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant, but

(3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance.

*J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 411 (5th Cir.1987) (citation omitted). These general precepts must be considered "in light of the particular circumstances of a corporation's organization." *Id.* at 412.

 While Kroger has a significant presence in Texas, Texas is not Kroger's primary place of activity; rather, Kroger's operations are far flung all over the United States. While Kroger's operations are far flung, its corporate headquarters are in Ohio. *Kroger's Reply in Opposition to Plaintiff's Motion to Remand and Brief in Support of Kroger's Notice of Removal and Henpil's Motion to Dismiss*, Exhibits D and E. Under these circumstances, this court's attention is focused to the first precept of the total activities test. Accordingly, the court finds that Ohio, as the central nerve center of Kroger, is the principal place of business for Kroger. Under this line of argument, diversity exists between Kroger and Plaintiff.

### B. *Diversity between Henpil and Plaintiff*

As long as Henpil is properly joined in this action, complete diversity is not present. Both McCabe and Henpil are citizens of Texas; therefore, there is no diversity between the two parties. This fact alone is sufficient to prevent this court from exercising diversity jurisdiction. Nevertheless, Defendants assert that removal under diversity jurisdiction was proper because Henpil, Inc. was fraudulently joined. If Defendants are correct, complete diversity between the plaintiff and defendants would exist, and diversity jurisdiction could be exercised by this court.

 "[I]t is the party who urges jurisdiction upon the court who must always bear the burden of demonstrating that the case is one which is properly before the federal tribunal." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec.1981). And when a claim of fraudulent joinder is asserted, it must be supported by clear and convincing evidence. *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). In *B., Inc.*, the court stated that:

[t]he burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc.*, 663 F.2d at 549.

 A claim of fraudulent joinder should be handled in a manner similar to a motion for summary judgment. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992). Hence, "fraudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence...." *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir.1994); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). Such evidence may consist of affidavits, deposition transcripts or the factual allegations contained in a verified complaint. *B., Inc.*, 663 F.2d at 549. Once a court has considered all of the evidence and "all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party

whose joinder is questioned." *LeJeune,* 950 F.2d at 271.

 Plaintiff's claim against Henpil, Inc. is based on premises liability and founded in state law. In Texas, "an occupier of premises owes a duty to use ordinary care to keep the premises in a reasonably safe condition for invitees." *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 324 (Tex.1993). Under this general rule, an "occupier of premises" is defined as:

(a) a person who is in occupation of the land with intent to control it, or

(b) a person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

*Prestwood v. Taylor,* 728 S.W.2d 455, 459–60 (Tex.App.—Austin 1987, writ ref'd n.r.e.) (citing Restatement (Second) of Torts § 328E). Therefore, an individual or entity with actual control or a legal right of control of a premises will owe a duty of ordinary care to keep the premises in a reasonably safe condition for invitees.

 This duty may also apply to lessees of leased property. Where part of a premises is leased by a tenant, the tenant is usually responsible only for the area actually leased. Hence, any duty owed to an invitee will extend only to the limits of the rented premises. *Howe v. Kroger Co.,* 598 S.W.2d 929, 931 (Tex.Civ.App.—Dallas 1980, no writ). The right of a tenant to have and allow ingress and egress over the common areas does not extend the tenant's responsibility to maintain the premises not leased exclusively to it. *Renfro v. Giant Foods, Inc.,* 501 S.W.2d 357 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). But the terms of the lease may create a duty to maintain the common areas on the part of the tenant. *See Howe,* 598 S.W.2d at 930 (construing *Goldstein Hat Mfg. Co. v. Cowen,* 136 S.W.2d 867 (Tex.Civ.App.—Dallas 1940, writ dism'd judgm. cor.) to hold that a lease may create a duty on the part of the tenant over common areas). If the lease makes the landlord liable for maintenance of the common areas, then the tenant is generally absolved of liability for maintaining the common areas. *Cf. Johnson v. Tom Thumb Stores, Inc.,* 771 S.W.2d 582, 584–85 (Tex.App.—Dallas 1989, writ denied) (lease providing that landlord was responsible and had control over common areas absolved tenant from liability for slip and fall). If, however, the tenant is in actual control over the common area, then liability may lie regardless of the lease provisions. *Wal–Mart Stores, Inc.,* 868 S.W.2d at 325.

Plaintiff contends that she has asserted a viable cause of action against Henpil. Specifically, Plaintiff argues that Henpil's duty to keep the Kroger store in a reasonably safe condition can be based on four grounds. First, Plaintiff alleges that Henpil had the right to control the premises. Second, Plaintiff alleges that Henpil was the alter ego of Kroger and, therefore, had *de facto* control over said premises. Third, Plaintiff alleges that Henpil had actual control over the area where Plaintiff injured herself. *Plaintiff's Response to Henpil, Inc.'s Motion to Dismiss,* ¶ 22. Fourth, Plaintiff alleges that Henpil and Kroger are joint venturers.

### 1. *Right to Control*

 Henpil would have a duty to keep the accident site in a reasonably safe condition if it had a legal right to control the accident site. However, Henpil does not have the legal right to control the accident site. Any right of control which Henpil might have would be set forth in its lease with Kroger. Henpil's lease provides:

In consideration of the covenants, promises and agreements contained herein, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor certain defined premises within Lessor's stores for display and self-service sales in the sales room and storage space (for immediate needs of Lessee and not for warehouse purposes) in the stockroom of said store premises....

TO HAVE AND TO HOLD said leased premises, together with the right of ingress to and egress from the leased premises over and across the store premises of Lessor....

*Kroger's Reply in Opposition to Plaintiff's Motion to Remand and Brief in Support of Kroger's Notice of Removal and Henpil's Motion to Dismiss,* Exhibit K. This issue has been considered before by this court, and the court adopts the reasoning behind its prior holding. *McCabe v. The Kroger Co.,* No 1:94–CV–336 (E.D.Tex. Aug. 19, 1994). It is undisputed that Plaintiff's injury did not occur within the area leased by Henpil. Rather, Plaintiff's injury occurred in an area legally possessed by Kroger. While this lease grants Henpil the right of ingress and egress over the common areas, it does not grant the right to control the common areas in any other manner. As noted earlier, the caselaw holds that the right of ingress and egress is not enough to create a duty. Furthermore, the lease provides that Kroger must maintain the entire store, including the common areas. In contrast, the lease does not create a duty to maintain the common areas on the part of Henpil. Clearly, the lease did not create a duty upon Henpil to maintain the area in which Plaintiff injured herself.

As additional proof of Henpil's right of control, Plaintiff points to the fact that Henpil had filed an Assumed Name Certificate certifying Henpil as doing business as "The Kroger Co." at the premises in question. However, the existence of this assumed name certificate does not make Henpil responsible for the common areas over which Henpil does not otherwise have ownership or control. *Cohen v. C.H. Leavell & Co.,* 520 S.W.2d 793, 795 (Tex.Civ.App.—El Paso 1975, no writ).

### 2. *Alter ego*

Under some circumstances, Texas law will allow a plaintiff to pierce the corporate veil. While the corporate form will normally protect shareholders from corporate obligations, if the shareholders "abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable." *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986). Alter ego is

"one of the bases for disregarding the corporate fiction: 'where a corporation is organized and operated as a mere tool or business conduit of another corporation.'" *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986) (quoting *Pacific American Gasoline Co. v. Miller,* 76 S.W.2d 833 (Tex.Civ. App.—Amarillo 1934, writ ref'd)). Thus, when "there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice," a court may hold a shareholder liable for the actions of the corporation. *Id.*

Plaintiff argues that Henpil is the alter ego of Kroger and, therefore, is somehow liable for the actions of Kroger. Assuming Plaintiff's allegations that Henpil is the alter ego of Kroger are true, Henpil is still not liable for Plaintiff's injuries.[1] In essence, the alter ego theory merely allows a plaintiff to hold a shareholder or parent corporation liable for the actions of a subsidiary corporation. However, this mechanism establishes liability in only one direction. While a parent corporation can be held liable for the acts of a subsidiary corporation under the alter ego theory, the subsidiary corporation is not liable for the acts of the parent or shareholder merely on the basis of alter ego. *See Stewart & Stevenson v. Serv–Tech, Inc.,* 879 S.W.2d 89, 108 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (disregarding the corporate form under alter ego requires "that there be some financial interest, ownership or control by the corporation sought to be held liable for the tort of the other corporation, in the other corporation."). Thus, Kroger could be liable for an act of Henpil; however, Henpil is not liable for the acts of Kroger even if Henpil is the alter ego of Kroger. While Henpil may be a business conduit of Kroger, this relationship does not, in and of itself, provide Henpil with control over Kroger or any property under the control of Kroger. Henpil will not be liable for the conduct of Kroger on the basis of alter ego.

---

1. As it is not necessary to do so, this court does not consider whether Henpil is in fact the alter ego of Kroger.

### 3. *Actual control*

Plaintiff also alleges that Henpil had actual control over the accident site. As previously noted, a lessee may be liable for an area over which it exerts actual control. Plaintiff seems to argue that Henpil had actual or *de facto* control over the entire store because it is the alter-ego of Kroger and *de facto* consolidated with Kroger. The court finds no support for these allegations anywhere in the record. In fact, Plaintiff's own allegations and exhibits indicate that Henpil exerted no control over Kroger or the accident site.

9. Mr. Carey Lee Brewer, Henpil, Inc.'s President, testified in his deposition that The Kroger Co. is operating the business of this Texas corporation under its "total power and control." All of the ordinary operating expenses of Henpil, Inc., pertaining to the selling and buying of beer and wine at the Kroger Food Stores, including advertising, employees, salaries, merchandising, purchasing, negotiations, pricing, banking, bookkeeping, are handled by The Kroger Co. (See Brewer's depo., pages 30, 34, 56, 60, 62, 76, 78, 87, 91, 92, 93, 95 and 129.) In fact, Henpil owns nothing other than 51% of the inventories, and a corporate office or a telephone number does not even exist. (Brewer's depo., pp. 42, 79, 86.) The Henpil, Inc.'s corporate office address in Houston, Texas, is actually owned by The Kroger Co. (Brewer's depo., p. 42.)

10. Additionally, Henpil is an insured under the same insurance policy as The Kroger Co. (Brewer's depo., p. 104.) The beer and wine are sold and purchased by The Kroger Co. under Henpil's Texas license. (Brewer's depo., p. 107.) The total financial record-keeping function is performed by The Kroger Co. In fact, Mr. Brewer, the so-called Henpil's president, does not even know the net worth of Henpil, Inc. (Brewer depo., p. 48.) He does not even know where Henpil's bank account is located and does not know how much money is in the bank. (Brewer depo., pp. 56 and 57.) The Kroger Co. has the total control and is in full operation of the Texas corporation, Henpil, Inc.

*Plaintiff's Motion to Remand,* ¶¶ 9–10. If anything, the evidence indicates that Kroger exerted control over daily operations and the activities at the store in question. The evidence indicates that Henpil did not exert actual control over the accident site.

### 4. *Joint venturers*

 Plaintiff contends that because Kroger and Henpil are joint venturers, Henpil may be liable for her injury. "Participants in a joint adventure are engaged in the joint prosecution of a particular or singular transaction for mutual benefit or profit." *Gray v. West,* 608 S.W.2d 771, 776 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). To establish a joint venture, four elements must be present: (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals, and (4) agreement to share losses, costs or expenses.

 A joint venture is handled by courts similarly to a partnership, and the rules which apply to partnerships will normally apply to joint ventures. *Brazosport Bank v. Oak Park Townhouses,* 889 S.W.2d 676, 683 (Tex.App.—Houston [14th Dist.] 1994, writ requested). Therefore, in the case at hand, a joint venturer would be "jointly and severally liable for joint venture debts and obligations."[2] *Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988) (citing Tex.Rev. Civ.Stat.Ann. art. 6132b, § 15 (Vernon 1970)). However, this liability is not without limits. For a joint venturer to be liable for the actions of another joint venturer, the joint venturer's conduct must have occurred in the ordinary course of business of the joint venture, or the joint venturer must have acted with the actual, implied, or apparent authority of the joint venture. *See* Tex.Rev. Civ.Stat.Ann. art. 6132b, § 13 (Vernon 1970). Neither situation is presented in the case at hand.

 It appears that Kroger and Henpil may be joint venturers for the purpose of

---

2. Assuming Henpil and Kroger were in a joint venture, the court looks to the Texas Uniform Partnership Act because the joint venture presumably had been created prior to January 1, 1994. Tex.Rev.Civ.Stat.Ann. art. 6132b, § 15(1) (Vernon Supp.1995).

selling spirits and liquor in Texas Kroger stores. While there may be a joint venture for that purpose, the joint venture does not extend into every aspect of Kroger's business. Rather, the record indicates that Henpil and Kroger's community of interest does not extend past the sale and related business of spirits. Outside of this common enterprise, the elements of a joint venture are not present. Kroger maintained complete control and autonomy over other business aspects unrelated to the sale of spirits. It is clear that Henpil did not have a mutual right of control, community of interest, or interest in the profits and losses for business being transacted outside the realm of spirits. While Henpil might be liable for Kroger's tortious conduct intertwined with the business of selling liquor, Henpil will not be liable under a joint venture theory for other Kroger conduct because that conduct is not performed in the ordinary course and scope of the business of the joint venture. Plaintiff's alleged injury has no relation to Henpil's and Kroger's business of selling liquor; consequently, Henpil could not be held liable for this claim.

When all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of Plaintiff, the court is of the opinion that Plaintiff has no possibility of establishing a cause of action against Henpil. Henpil neither owed nor breached any duty to Plaintiff. Plaintiff's complaint lies with Kroger, not Henpil. Henpil had no right of control under its lease over the injury site, and Plaintiff's attempt to show an actual right of control independent from the lease is in vain. There being no cause of action against Henpil, it appears that Henpil was fraudulently joined in this action.

## C. *Imputing of Henpil's Citizenship to Kroger*

Plaintiff offered one final argument against diversity jurisdiction based on her alter ego contention. Under certain circumstances, a subsidiary corporation's citizenship may be imputed to the parent corporation. In the case at bar, Plaintiff contends that Henpil's citizenship should be imputed to Kroger because Henpil is the alter ego of Kroger. If

the court does impute Henpil's citizenship to Kroger, complete diversity will be destroyed.

The Fifth Circuit has held that "[w]hen two corporate entities act as one, or are in fact one, they should be treated as one for jurisdictional purposes." *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 558 (5th Cir.1985); *contra Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1120 (D.C.Cir.), *cert. denied*, 502 U.S. 822, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991). In *Freeman*, three parties were involved. The plaintiff was a Colorado citizen; the parent corporation was an Oregon citizen; the subsidiary corporation was a citizen of Colorado. While the plaintiff brought suit against the parent corporation, the tortious conduct was actually committed by the parent corporation's subsidiary corporation. Because the subsidiary was the alter ego of the parent corporation, the court imputed the citizenship of the subsidiary to the parent. Therefore, the court held that the parent, "as a constituent of an effectively consolidated corporation with Colorado citizenship, should itself be deemed a Colorado citizen in suits arising from the actions of the consolidated entity." *Freeman*, 754 F.2d at 557.

While it is true that an alter ego's citizenship can be attributed to a shareholder for jurisdictional purposes, a subsidiary's citizenship will not be imputed to its parent or shareholder on every occasion or in every instance. An alter ego's citizenship should be imputed only when the claim arises from the alter ego's actions. *See Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 290–91 (5th Cir.1989); *see also Panalpina Welttransport GmBH v. Geosource, Inc.*, 764 F.2d 352, 355 (5th Cir.1985). In *Kuehne & Nagel*, the Fifth Circuit attributed a subsidiary's citizenship to its parent corporation for one claim; however, the court did not impute the subsidiary's citizenship for two other claims. *Id.* The distinction was based on the fact that the former claim was based on the subsidiaries actions while the latter claims arose out of the parent's actions. *Id.* at 291 ("This conclusion is not undermined by the fact that [the plaintiff's] other claim against [the parent corporation] for fraudulent inducement is predicated on [the parent corporation's] own

conduct and [the parent corporation] does not assume [the subsidiary's] alien residence for this claim.... [The parent corporation] sued the forwarders to recover its own losses resulting from the forwarders' alleged tortious interference with the [parent-subsidiary] contract; consequently we do not impute [the subsidiary's] alien citizenship to [the parent corporation] for this claim.").

In the case at bar, Plaintiff's action arose out of Kroger's alleged conduct and omissions. As previously mentioned, Plaintiff has no claim against Henpil, and this lawsuit does not arise out of Henpil's actions. For this reason, Henpil's citizenship should not be imputed to Kroger under *Freeman*. Therefore, complete diversity is still present.

## CONCLUSION

The court is of the opinion that Henpil was fraudulently joined in this action and that Henpil's citizenship should not be imputed to Kroger. Hence, complete diversity is present. Because this court has subject matter jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332, Plaintiff's Motion to Remand is DENIED.